112 F.3d 516
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Maria Socorro LIRIO-BISCOCHO, aka Maria Socorro Lirio; aka
Maria Socorro Biscocho Glenn, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 95-70820.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 5, 1997.
April 24, 1997.
 
 1
 Before BROWNING and KLEINFELD, Circuit Judges, and MERHIGE, District Judge.*
 
 
 2
 MEMORANDUM**
 
 
 3
 To be a "refugee" entitled to asylum, petitioner would have had to show "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). The BIA findings of fact, "if supported by reasonable, substantial, and probative evidence on the record as a whole, shall be conclusive." 8 U.S.C. § 1105a(a)(4). There was substantial evidence on the record considered as a whole that petitioner was not persecuted and had no well-founded fear of persecution, as the BIA found, so none of petitioner's other contentions need to be decided.
 
 
 4
 Petitioner's primary theory was that she was persecuted because of mistreatment of married women in the Philippines. The only person who allegedly persecuted her was her husband. The spousal abuse she claimed was that her husband was frequently drunk, yelled at her, once slapped her, and threatened to hit her with a belt, although he did not:
 
 
 5
 [[Immigration] Judge's questions]
 
 
 6
 Q. What was the reason you came to the United States?
 
 
 7
 A. Well, it's because my, I just want to get apart from my husband.
 
 
 8
 [Question by Ms. Lirio's attorney]
 
 
 9
 Q. Why did you want to get away from your husband?
 
 
 10
 A. Well, because you see, every morning he's drunk. From morning to evening and he's always yelling at me, something like that. Always mad and sometimes he threatened me so I said I will leave you.
 
 
 11
 Q. Okay, what kind of threats did he--
 
 
 12
 A. Well, he just, something like he's beginning to hurt me, not threat. He was beginning to hurt me so sometimes--
 
 
 13
 [Question by Judge]
 
 
 14
 Q. Physically?
 
 
 15
 A. He had to pull off his belt and he aim at me and so I get mad. I don't want to be like that.
 
 
 16
 Q. He hit you with his belt?
 
 
 17
 A. No, he can't hit me. I will fight him.
 
 
 18
 Q. Did he threaten you with his belt?
 
 
 19
 A. Well, he aim at me but he didn't--he aim at me but did not continue.
 
 
 20
 [Judge's question]
 
 
 21
 Q. So he didn't actually hit you with the belt but he would act like he was going to?
 
 
 22
 A. Yes.
 
 
 23
 [Question by Ms. Lirio's attorney]
 
 
 24
 Q. Okay, so he's threatened you that way for many years?
 
 
 25
 A. He's not threatening my life, I mean, he's just hurting me. He just begin to hurt me.
 
 
 26
 Q. Did he ever hurt you physically?
 
 
 27
 A. Yes, all the time. He just slap me on my face so I throw him a bottle. I just did not hurt him. I just throw a bottle on the floor.
 
 
 28
 As bad as this marriage may have been, a person's treatment of his or her spouse in this manner is not the kind of persecution for which Congress provided asylum in 8 U.S.C. § 1101(a)(42)(A). Generally the word "persecution" means "the infliction of suffering or harm upon those who differ (in race, religion or political opinion) in a way regarded as offensive." Fisher v. INS, 79 F.3d 955, 961 (9th Cir.1996). "Persecution is an extreme concept," which ordinarily does not include discrimination on account of sex. Id. at 961, 963.
 
 
 29
 Like the BIA, we do not find it necessary to reach the question of whether the ALJ had an adequate basis on which to doubt Ms. Lirio-Biscocho's credibility. We also do not need to reach the question of whether Ms. Lirio-Biscocho should have been allowed to submit the Philippines Country Report before the BIA, when she had not submitted it before the ALJ. Even if she had submitted it, it would make no difference to her case, because Ms. Lirio-Biscocho does not claim to have been refused government protection from domestic violence or rape.
 
 
 30
 Even if we accept for purposes of argument Ms. Lirio-Biscocho's implausible claim that she would go back to live with her husband for lack of any place else to go, despite her other relatives in the Philippines, and despite the fact that she has divorced her Filipino husband, what she claims to fear does not rise to the level of "persecution." Being yelled at by a spouse, slapped perhaps once, and threatened frequently but never hit with a belt, rises considerably less far toward the level which would be classified as persecution than the conduct in Fisher. This does not even reach the question of whether it is persecution because of membership in a social group, since it is highly likely that the condition of being yelled at and threatened by one's spouse is not limited to persons of one sex.
 
 
 31
 There was also substantial evidence on the record as a whole that Ms. Lirio-Biscocho had no well-founded fear based on her husband's political affiliation. Petitioner's evidence was that there had been robberies against members of her family and that they had received requests for donations attributable to the "New People's Army" with an implied threat of harm. But the evidence allowed for the BIA's conclusion that this was as likely because of her family's wealth as its politics. Also, any attribution of Ms. Lirio-Biscocho's husband's pro-Marcos sentiments to her would be even further attenuated by the fact that she has divorced him.
 
 
 32
 PETITION DENIED.
 
 
 
 *
 The Honorable Robert R. Merhige, Jr., Senior United States District Judge, for the Eastern District of Virginia, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3